## CAMPBELL v CRIST

Ohio Appeals, 1st Dist, Butler Co
No. 492. Decided May 4, 1931

David Pierce and W. S. Harlan, Hamilton, for Campbell.

Andrews, Andrews & Rogers, Hamilton, for Crist.

ROSS, PJ.

There is evidence that Frank Crist was told by Campbell at the time the negotiations were concluded that he, Campbell, held a mortgage upon the property purchased by F. M. Crist, and that he, Campbell, would not release this mortgage unless F. M. Crist as well as Allie Crist signed the note for $3195, and that F. M. Crist believing that Campbell held such mortgage and that he could not get an unincumbered title unless he gave Campbell the note, signed the note.

It is undisputed that there was no mortgage upon the property at the time the negotiations were concluded, although Campbell had previously held a mortgage, which had been paid and cancelled of record.

As against the evidence of Allie and Frank M. Crist supporting the misrepresentations, it is apparent that Allie Crist at all times knew there was no mortgage upon the premises. Frank Crist states he neither made nor had made any examination of the county records for other liens, even when the deed of the property to him was recorded, although they had an automobile with them, and were only a few miles from the county seat. There is no evidence that Frank M. Crist ever ascertained the exact amount of the mortgage or its terms. Frank M. Crist was a man of affairs and familiar with the details of the acquisition of real property. He states he did not learn that there was no mortgage upon the property until eight years after the transaction. He later executed a mortgage upon the property covering a loan and this mortgage recited that the title was clear, free, and unincumbered. He had at this time received no cancelled mortgage from Campbell, because there was none to cancel. This mortgage was dated March 3, 1921. He had received his deed from his brother November 1, 1919; the negotiations for the sale of the premises from Allie Crist to Frank M. Crist, in the presence of Campbell, having been concluded October 10, 1919.

There is evidence that at the time Frank M. Crist executed the mortgage to Huffman, in 1921, he was present when an examination of the records were made. If so, it must have been apparent that there had been no mortgage upon the premises, such as it is claimed Campbell represented at the time of the closing of the negotiations with Allie Crist and Campbell.

There is in the record strong evidence that the statements about the mortgage were not made by Campbell.

It is somewhat significant in connection with other matters in evidence that Frank M. Crist filed an original answer, in which he alleged that the note was executed by his brother as maker and himself as surety; that the note was never presented for payment, and that he was not notified of non-payment. These being the only defenses.

The defense of fraud and deceit seems to have been an after-thought rather than a subsequent discovery, for it is admitted Frank M. Crist knew of the alleged fraud a year or more before the suit upon the note was instituted against him.

Our conclusion is that it is incredible that Frank M. Crist, who was in no hurry to close this transaction, should have obligated himself, a man of affairs as he was, to the extent of some $22,000, and signed an additional note for $3195, knowing of the existence of a mortgage without some assurance of the cancellation of this lien. This is especially true in view of the fact that only a small proportion of the sum was paid in cash and he had ample time to ascertain the existence of liens upon the premises and to secure a release of the mortgage before final satisfaction of the deferred payments, and this in spite of the fact that these men were friends.

Bearing in mind that the burden of proof rested upon the defendant Frank M. Crist to establish the fraud, we feel that the evidence falls far short of proving such misrepresentations and deceit, as would justify the judgment in the trial court.

It is claimed that the court committed error in the giving of certain special instructions, and in its general charge, in that elements required to constitute a case of fraud were omitted.

We do not approve the instructions' or charge criticized, as given. Without in detail discussing each separately, we consider it sufficient to state the rule of law applicable and call attention to the fact that the instructions and portion of the charge criticized do not include all the necessary requisites. The rule has been well stated in 12 R. C. L., at pages 239 and 240, as follows:

"The law requires good faith in every business transaction, and does not allow one intentionally to deceive another by false representations or concealments, and if he does so it will require him to make such representations good, but it does not make one party to a contract responsible in damages for every unauthorized, erroneous, or false representation made to the other, although it may have been injurious. The ground of the action of deceit is fraud and damage, and when both concur the action will lie. Moreover, both must concur to constitute actionable fraud, a common statement of the rule being that neither fraud without damage, nor damage without fraud, is sufficient to support an action. The essential elements required to sustain an action for deceit are that the representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage. All of these ingredients must be found to exist, and the absence of any one of them is fatal to a recovery; though under the rulings of some courts the rule is greatly relaxed as to knowledge and intent, where the relief sought is rescission."

It has been held that a special charge need not contain more than a simple and single proposition of law, but where a special instruction purports to define what shall constitute fraud, in any case, it must include all the elements necessary to constitute fraud. Naturally the same requirement is applicable to the general charge.

For the reasons given, the judgment being against the weight of the evidence, the judgment of the Court of Common Pleas will be reversed, and the cause remanded to that court for a new trial.

HAMILTON and CUSHING, JJ, concur.